ANSWER OF THE JUSTICES TO THE HOUSE OF
REPRESENTATIVES.

*Constitutional Law,* Opinions of the Justices. *Supreme Judicial Court,*
Opinions of the Justices.

The Justices declined to give their opinions to a branch of the General
Court on a question as to the power of the city of Boston under art.
89 of the Amendments to the Massachusetts Constitution to adopt an
ordinance to control the rent for the use or occupancy of housing
accommodations in the city without a special enabling act passed by
the General Court such as a proposed act submitted with the order
transmitting the question, for the reason that there was no "solemn
occasion" under Part II, c. 3, art. 2, of the Constitution, as amended
by art. 85 of the Amendments.

On August 14, 1969, the Justices submitted the following
reply to a question propounded to them by the House of
Representatives.

To the Honorable the House of Representatives of the
Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court
respectfully submit this reply to the question set forth in an
order adopted by the House on July 8, 1969, and trans-
mitted to us on July 11. The order recites the pendency
before the General Court of a bill printed as House No.
4209, as changed, entitled, "An Act confirming the au-
thority of the city council of the city of Boston to impose a
rent control law in the city of Boston," a copy of which is
submitted with the order.

The bill, as changed, is as follows:

"Notwithstanding any provision of law to the contrary,
when public exigency, emergency or distress exists in the
city of Boston, the city council of said city, with the
approval of the mayor, may by ordinance control the rent
for the use or occupancy of housing accommodations in

structures having four or more dwelling units excluding motels, hotels or inns, and may create a rent board and empower it to establish as the maximum rent for housing accommodations in the city of Boston the rent in effect therefor on the thirty-first day of March, nineteen hundred and sixty-eight, or such higher amount as may be necessary to remove hardships or correct inequities."

The question is:

"Has the City of Boston power under Section 6 of Article II of the Amendments to the Constitution of the Commonwealth (as amended by Article LXXXIX of such amendments), as limited by Section 7 of said Article II as so amended (see especially clause (5)), to adopt an ordinance to control the rent for the use or occupancy of housing accommodations in said city without a special enabling act passed by the General Court such as House, No. 4209, changed?"

The order does not make the usual recital that "Grave doubt exists as to the constitutionality of said bill, if enacted into law." The recital made is: "Said bill presents to the House of Representatives an important question of constitutional law, which it is necessary that the House of Representatives determines before taking any further action on said bill in the exercise of the legislative power entrusted to it by the Constitution of the Commonwealth."

Article 89 of the Amendments, which amended art. 2 of the Amendments, is known as the Home Rule Amendment. It was adopted by the General Court (Joint Legislative Session) of 1963 and 1965, and was approved by the people on November 8, 1966. It is rather long for a single amendment, and is unusually complicated. This is the first time a question as to the construction of any part of the Home Rule Amendment has been presented to the Supreme Judicial Court or its Justices.

Article 89 substantially modifies the policy of the Commonwealth as to municipal power which had been in accord

with the rule stated in Dillon, Municipal Corporations (5th ed.) § 237, generally called "Dillon's Rule." See *Atherton* v. *Selectmen of Bourne,* 337 Mass. 250, 255-256, and cases cited.

Subsequent to the present request for an advisory opinion, two more such requests involving the Home Rule Amendment have been transmitted to us. One concerns House Bill No. 5486, entitled, "An Act providing for the financing, construction, maintenance, repair and operation by the Massachusetts Turnpike Authority of certain public facilities consisting of a stadium complex, a third vehicular tunnel, the Worcester toll road and an arena." The other relates to Senate Bill No. 1466, entitled, "An Act authorizing the amendment, revision or repeal of certain special laws by the adoption, revision or amendment of a charter of a city or town." All three requests are closely related.

The basic general policy of art. 89 is stated in § 1, entitled, "Right of Local Self-Government." "It is the intention of this article to reaffirm the customary and traditional liberties of the people with respect to the conduct of their local government, and to grant and confirm to the people of every city and town the right of self-government in local matters, subject to the provisions of this article and to such standards and requirements as the general court may establish by law in accordance with the provisions of this article."

The portions of art. 89 which are specifically cited in the question are § 6 as limited by § 7 (5). Section 6 reads: "Any city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court in conformity with powers reserved to the general court by section eight, and which is not denied, either expressly or by clear implication, to the city or town by its charter. This section shall apply to every city and town, whether or not it has adopted a charter pursuant to section three." Section 7 provides in material

part: "Nothing in this article shall be deemed to grant to any city or town the power ... (5) to enact private or civil law governing civil relationships except as an incident to an exercise of an independent municipal power . . .."

Also of general importance is the first paragraph of § 8, entitled, "Powers of the General Court," which reads: "The general court shall have the power to act in relation to cities and towns, but only by general laws which apply alike to all cities, or to all towns, or to all cities and towns, or to a class of not fewer than two, and by special laws enacted (1) on petition filed or approved by the voters of a city or town, or the mayor and city council, or other legislative body, of a city, or the town meeting of a town, with respect to a law relating to that city or town; (2) by a two-thirds vote of each branch of the general court following a recommendation by the governor; (3) to erect and constitute metropolitan or regional entities, embracing any two or more cities or towns or cities and towns, or established with other than existing city or town boundaries, for any general or special public purpose or purposes, and to grant to these entities such powers, privileges and immunities as the general court shall deem necessary or expedient for the regulation and government thereof; or (4) solely for the incorporation or dissolution of cities or towns as corporate entities, alteration of city or town boundaries, and merger or consolidation of cities and towns, or any of these matters."

The language of § 6 is to the effect that a city by ordinance may exercise any power which the General Court can confer upon it, and, standing by itself, is broad enough to authorize a municipality to enact a rent control ordinance or by-law. The limitation in § 7 (5) simultaneously withholds part of the authority prima facie conferred by § 6, including the enactment of "private or civil law governing civil relationships except as an incident to an exercise of independent municipal power." The meaning of "independent municipal power" is unclear.

In the bill the ground for exercise of the power by the city council is described as "when public exigency, emer-

gency or distress exists in the city." The bill sets forth no
standards for declaring an emergency, or for ensuring a fair
return on the value of the property, or for determining what
"may be necessary to remove hardships or correct ineq-
uities." Also lacking in the bill are any procedures for
judicial review of ordinances and related orders, or provi-
sions for methods, effectiveness and fairness of enforcement,
both within the city and in comparative areas elsewhere in
the Commonwealth.

The House has made no finding that there is an emer-
gency in Boston (compare St. 1953, c. 434, § 12) and
expresses no doubt as to the existence of any power of its
own. See the first sentence of art. 89, § 8, under which the
General Court may "act in relation to cities and towns . . .
by general laws which apply . . . to a class of not fewer than
two" cities or towns, and has authority to permit or forbid
local rent control legislation. The only doubt declared is
whether the city council has power, with the approval of
the mayor, to control the rent of certain housing accom-
modations "without a special enabling act . . . such as
House, No. 4209, changed." The bill is not an enabling act
but, as described in its title, its purpose is "confirming the
authority of the city council . . . to impose a rent control
law." In short, the bill is a device to raise a constitutional
question as to the power of the city council rather than of
the Legislature.

We are of the view that this is not a "solemn occasion" in
which we are permitted to give our opinion. The provision
of the Constitution, Part II, c. 3, art. 2, means that the
opinions of the Justices can be required only when impor-
tant " 'questions of law are necessary to be determined by
the body making the inquiry, in the exercise of the legisla-
tive . . . power entrusted to it by the Constitution and laws
of the Commonwealth.' *Opinion of the Justices,* 126 Mass.
557, 566. 'By a solemn occasion, the Constitution means
some serious and unusual exigency. It has been held to be
such an exigency when . . . either branch of the Legislature,
having some action in view, has serious doubts as to their

power and authority to take such action, under the Constitution, or under existing statutes.' *Answer of the Justices,* 148 Mass. 623, 625-626. *Answer of the Justices,* 290 Mass. 601, 602." *Opinion of the Justices,* 314 Mass. 767, 771. *Opinion of the Justices,* 319 Mass. 731, 734-735. *Opinion of the Justices,* 347 Mass. 792, 796. *Opinion of the Justices,* 347 Mass. 797, 798.

We therefore, respectfully request to be excused from answering this question.

> RAYMOND S. WILKINS.
> JOHN V. SPALDING.
> ARTHUR E. WHITTEMORE.
> R. AMMI CUTTER.
> PAUL G. KIRK.
> JACOB J. SPIEGEL.
> PAUL C. REARDON.