OPINIONS OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

*Constitutional Law,* Opinions of the Justices, Separation of powers. *Supreme Judicial Court,* Opinions of the Justices. *Municipal Corporations,* Insurance, Home rule. *General Court. Words,* "Domestic partners," "Dependents."

The Justices declined to give their opinions to the House of Representatives on a question as to the power of the city of Boston to provide health insurance benefits to "domestic partners" of city employees and their "dependents," for the reason that there was no "solemn occasion" requiring such opinion under Part II, c. 3, art. 2, of the Constitution of the Commonwealth, as amended by art. 85 of the Amendments. [1213-1216]

Certain proposed legislation, which would allow the city of Boston to define the terms "domestic partners" of city employees and their "dependents" for the purpose of extending health care benefit coverage, would not be an improper delegation of legislative authority, in violation of Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution, where the proposed legislation would not delegate the making of any fundamental policy decision to the city, where it provides adequate direction to the city for its implementation, and where adequate safeguards are provided to control any abuses of discretion [1216-1218]; nor was the proposed legislation "special" legislation unsupported by legitimate public purposes, such as would violate art. 10 of the Massachusetts Declaration of Rights [1218-1219]. Per WILKINS, C. J., ABRAMS, GREANEY, FRIED, MARSHALL, & IRELAND, JJ. LYNCH, J., dissenting.

On June 15, 1998, the Justices submitted the following reply to questions propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court respectfully submit this reply to the questions set forth in an order adopted by the House on February 26, 1998, and transmitted to us on March 3, 1998.[1] The order recites the pendency before the General Court of a bill printed as House Bill No.

---

[1] We invited interested parties to submit briefs. Briefs were received from the Attorney General; the Gay & Lesbian Advocates & Defenders, joined by other parties; the city of Boston; and the city of Springfield.

2194, entitled "An Act relative to employee benefits in the city of Boston."

The bill provides as follows:

"Section 1. Notwithstanding the provisions of any other general or special law to the contrary, including, without limiting the generality hereof, the provisions of G. L. c. 32B, § 2 (b), the city of Boston is hereby authorized to extend health benefit coverage to 'domestic partners' of city employees and their 'dependents', as said terms shall from time to time be defined by said city or ordinance.

"Section 2. This act shall take effect upon its passage."

The questions are:

"1. May the city of Boston, acting by means of its home rule powers set forth in sections 1 and 6 of Article 2 of the Amendments to the Constitution of the Commonwealth (as amended by Article 89), enact the provisions of House No. 2194 without the approval of the General Court, thereby rendering any legislative action unnecessary, or would such action by the city be inconsistent with existing general laws, including Chapter 32B of the General Laws, in violation of the provisions of said section 6 or be in violation of clause (5) of section 7 of said Article 2, thereby requiring legislative action on this bill?

"2. Does House No. 2194, which allows the city of Boston to define the terms 'domestic partners' and 'dependents,' from time to time, constitute an improper delegation of the powers of the Legislature in violation of the Constitution of the Commonwealth, particularly Part I, Article 10 or Part II, chapter 1, section 1, Article 4?"

Part II, c. 3, art. 2, of the Constitution of the Commonwealth, as amended by art. 85 of the Amendments, provides that "[e]ach branch of the legislature, as well as the governor or the council, shall have authority to require the opinions of the supreme judicial court, upon questions of law, and upon solemn occasions." The Justices' constitutional duty is to render opinions only when they are properly required, and to abstain from answering questions of law not required under this provision. *Answer of the Justices*, 319 Mass. 731, 733-734 (1946). A

solemn occasion exists "when the Governor or either branch of the Legislature, having some action in view, has serious doubts as to their power and authority to take such action, under the Constitution, or under existing statutes." *Answer of the Justices*, 364 Mass. 838, 844 (1973), quoting *Answer of the Justices*, 148 Mass. 623, 626 (1889). When the opinion of the Justices "would not assist the requesting body in carrying out a present duty . . . no solemn occasion exists and the Justices are constitutionally restrained from rendering an opinion regardless of the importance of the particular questions." *Answer of the Justices*, 426 Mass. 1201, 1203-1204 (1997), citing *Answer of the Justices*, 406 Mass. 1220, 1224 (1989) (declining to answer questions asked by Acting Governor where no question raised concerning Acting Governor's power or authority). We adhere strictly to our authority to render advisory opinions in order to "safeguard the separation of powers embodied in art. 30 of the Massachusetts Declaration of Rights." *Id.* at 1203, citing *Answer of the Justices*, 373 Mass. 898, 901 (1977); *Answer of the Justices*, 362 Mass. 914, 916-917 (1973); *Answer of the Justices*, 150 Mass. 598, 601 (1890); *Answer of the Justices*, 148 Mass. 623, 624 (1889).

*Question 1.* Question 1 asks whether the city of Boston (city) constitutionally may provide health insurance benefits to "domestic partners" and their "dependents" without first obtaining the approval of the Legislature, as provided in House No. 2194.[2] We decline to answer the question because no solemn occasion is presented. A solemn occasion is presented when there is serious doubt about the power and authority of the requesting branch to take action without violating the Constitution or existing statutes. *Answer of the Justices*, 356 Mass. 769,

---

[2] Article 89, § 1, of the Amendments to the Massachusetts Constitution, referred to as the "home rule" amendment, is intended "to reaffirm the customary and traditional liberties of the people with respect to the conduct of their local government, and to grant and confirm to the people of every city and town the right of self-government in local matters." Article 89 permits a city or town to "exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court in conformity with powers reserved to the general court by section eight, and which is not denied, either expressly or by clear implication, to the city or town by its charter." Art. 89, § 6. Section 7 limits municipalities from exercising certain enumerated powers unless granted by the General Court, as provided in § 8. The General Court has the power to enact a special law on petition by a municipality, or by enacting general laws that meet certain requirements.

773-774 (1969). Question 1 concerns the power to act of the city, not of the House, the requesting body.[3] In *Answer of the Justices*, 356 Mass. 769 (1969), the House requested an opinion regarding a home rule petition that would establish the power of the city to adopt a rent control ordinance in the event of a public emergency. The House asked whether the city had the power under the home rule amendment to adopt the rent control ordinance without a special enabling act passed by the General Court, a question similar in form to the one asked here. The Justices concluded that the bill was "a device to raise a constitutional question as to the power of the city council rather than of the Legislature," *id.* at 773, and declined to answer the question. Here, Question 1 asks whether legislative action is "unnecessary"; it does not suggest that the House has expressed any "doubt as to the existence of any power of its own." *Id.* at 773. For the reasons that the Justices explained in 1969, we similarly conclude that no solemn occasion is presented here.

Unlike the question presented by the House in *Answer of the Justices*, 356 Mass. 769, 771 (1969), Question 1 asks further whether action by the city to extend health benefit coverage to "domestic partners" of city employees and their "dependents" would be "inconsistent" with existing general laws, including G. L. c. 32B. The Attorney General suggests that the Justices should further decline to answer Question 1 because, in this respect, the question asks for an interpretation of an existing law and is, therefore, not a solemn occasion.[4] "[A] request for an opinion regarding the effect or construction of a statute is not

---

[3]In its brief the city informs us that its corporation counsel previously opined that the city did not have the power to act absent legislative authorization. The Attorney General and other amici draw our attention to the fact that several cities and towns have enacted provisions that grant health benefits to domestic partners without first obtaining the approval of the Legislature. Springfield, for example, initiated health insurance coverage for the domestic partners of its employees by executive order of the mayor dated January 9, 1996. Northampton provides coverage for the domestic partners of its employees by authority of an executive order. Cambridge provides such coverage under a municipal ordinance. City of Cambridge Municipal Code 2.119. Brookline, acting through its board of selectmen, will provide health insurance coverage for the domestic partners of town employees as of July 1, 1998, provided that the domestic partnership is registered with the town.

[4]In its brief, the city asks us to conclude that the city "may not enact the provisions of House No. 2194 without the approval of the General Court" because "such action . . . would be inconsistent" with G. L. c. 32B, and therefore in violation of the home rule amendment.

an 'important question of law' or a 'solemn occasion' within the meaning of the Constitution." *Opinions of the Justices*, 383 Mass. 895, 915 (1981). In 1981, the Justices declined to answer a question concerning the effect of proposed legislation and noted that, generally, the Justices decline to answer questions about the interpretation of existing laws because that would not affect the Legislature's power to declare — within constitutional limits — a bill's intended meaning. *Id.* at 915-916. Here, however, the constitutional authority of the city to act would depend on whether its actions would be "inconsistent" with existing legislation because § 6 of art. 89, of the Amendments to the Massachusetts Constitution, places precisely that limitation on the exercise of power by a city or town: were we permitted to answer Question 1, we would, of necessity, be required to determine whether the proposed ordinance was "not inconsistent with the constitution or laws enacted by the general court," including G. L. c. 32B. However, because Question 1 concerns the power of the city to act, and does not concern the power of the House to act, we may not consider whether the extension of health care benefits as described in House No. 2194 is inconsistent with G. L. c. 32B, or any other existing general law. See *Bloom* v. *Worcester*, 363 Mass. 136, 150 (1973) (describing alternative procedure for determining whether city ordinance "inconsistent" with existing general laws).

Even if Question 1 could be construed to ask whether the House, rather than the city, has the authority to adopt the home rule petition, and we do not suggest that such a construction is possible, it is obvious from the text of Part II, c. 1, § 1, art. 2, of the Massachusetts Constitution that the House has such authority, regardless of whether the adoption of the home rule petition is "necessary" for the city to act, and for this additional reason no solemn occasion is presented. In *Answer of the Justices*, 406 Mass. 1220 (1989), the Justices were asked by the Senate to consider the effect of proposed legislation on a general appropriation act in light of action taken by the Governor purporting to veto parts of the bill. The Justices concluded that it could not be "seriously doubted" that the Legislature had the power to amend prior legislation, *id.* at 1225, no matter how the Justices responded concerning the proposed amendments. Because it would not affect the Legislature's ability to amend the legislation, the Justices replied that no solemn occasion was presented. *Id.* See *Answer of the Justices*, 383 Mass. 895, 915-

916 (1981) (no solemn occasion because no question whether doubt exists as to the power of the Legislature to act). Similarly here, it cannot be doubted the Legislature would have the power to adopt House No. 2194, even if we concluded that the home rule petition was "unnecessary."

*Question 2.* Question 2 asks whether House No. 2194 is an "improper delegation" of the powers of the Legislature to the city of Boston in violation of art. 10 of the Massachusetts Declaration of Rights or Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution. We answer Question 2, "No."

We consider first the requirements of Part II, c. 1, § 1, art. 4.[5] If the city has the power to enact the proposed ordinance without the approval of the Legislature, as several other cities and towns already have concluded, see note 3, *supra,*[6] then the Legislature cannot improperly delegate powers that the city already possesses. On the other hand, assuming that such authorization is required, the delegation of such authority to the city contained in House No. 2194 is proper. We review the delegation of lawmaking power to the city in light of the policy underlying the home rule amendment that "maximum elbow-room [be provided] for localities in solving local problems on their own initiative." First Report of the Special Commission on Implementation of the Municipal Home Rule Amendment to the State Constitution, 1966 Senate Doc. No. 846, at 18. See *Bloom* v. *Worcester*, 363 Mass. 136, 143 n.4 (1973), quoting 1965 Senate Doc. No. 950, at 65-66 (noting that home rule amendment such as one adopted in Massachusetts provides "the strongest type of home rule").

In making a determination whether a delegation of legislative authority is proper the Justices undertake a threefold analysis: "(1) Did the Legislature delegate the making of fundamental policy decisions, rather than just the implementation of legislatively determined policy; (2) does the act provide adequate direction for implementation, either in the form of

---

[5]Part II, c. 1, § 1, art. 4, provides in part: "[F]ull power and authority are hereby given and granted to the said general court, from time to time, to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, and ordinances, directions and instructions, either with penalties or without; so as the same be not repugnant or contrary to this constitution."

[6]Whether or not the city may provide health care benefits to domestic partners of city employees without the approval of the Legislature is not a matter we need address.

statutory standards or, if the local authority is to develop the standards, sufficient guidance to enable it do so; and (3) does the act provide safeguards such that abuses of discretion can be controlled?" *Chelmsford Trailer Park, Inc.* v. *Chelmsford*, 393 Mass. 186, 190 (1984). The proposed legislation satisfies all three parts of the analysis. First, the legislation does not delegate the making of any fundamental policy decision to the city. The Legislature previously has recognized that the provision of insurance benefits to employees and to their household members is a legitimate public purpose. See, e.g., G. L. c. 32A, § 2 (*b*) and (*d*), and G. L. c. 32B, § 2 (*b*) and § 2 (*d*), extending health benefit coverage to certain public employees and their dependents. See also St. 1996, c. 203; St. 1997, c. 170.[7] Here, House No. 2194 expresses a policy and purpose that is consistent with previously declared legislative policy in the area of employee benefits, specifically health insurance benefits. Authorizing the city to define the terms "domestic partners" and "dependents" is not a fundamental policy decision; rather, the authorization allows the city to implement the Legislature's previously stated purpose of extending health care coverage to employees, their household members, and their dependents.

Second, the proposed legislation provides adequate direction to the city for implementation. The terms "domestic partners" and "dependents" have meanings evident from the words themselves, and thus impose constraints on the city's authority to extend benefits. See *Commonwealth* v. *One 1986 Volkswagen GTI Auto.*, 417 Mass. 369, 372 (1994), quoting *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977) (undefined terms in statute given their "usual and accepted meanings, as long as these meanings are consistent with the statutory purpose"). In addition, the term "domestic partner" may be defined with

---

[7]The preamble to St. 1996, c. 203, An Act providing for improved access to health care, provides: "Whereas, the deferred operation of this act would tend to defeat its purpose, which is to immediately make available health care coverage to uninsured children and adults . . . therefore it is hereby declared to be an emergency law, necessary for the immediate preservation of the public convenience." The preamble to St. 1997, c. 170, An Act expanding access to quality health care for working families, children and senior citizens in the Commonwealth, provides: "Whereas, the deferred operation of this act would tend to defeat its purpose, which is to assist forthwith in making health care services available to low income uninsured and underinsured residents of the commonwealth, therefore it is hereby declared to be an emergency law, necessary for the immediate preservation of the public convenience."

reference to the city's existing domestic partnership ordinance. Boston Public Health and Welfare Ordinance 12-9A.1(a)(6) (1993). Similarly, the definition of the term "dependent" may be guided by reference to other general laws. See, e.g., G. L. c. 118, § 1 (defining "dependent child" for aid to families with dependent children); G. L. c. 175, § 108 (3) (defining "dependent children" for accident and health insurance). See also G. L. c. 209A, § 1 (e), defining "[f]amily or household members" to include persons who "are or have been in a substantive dating or engagement relationship, which shall be adjudged by . . . consideration of the following factors: (1) the length of time of the relationship; (2) the type of relationship; (3) the frequency of interaction between the parties." We conclude that there are adequate safeguards for any possibility of abuse of any claimed discretion delegated to the city. We also observe that G. L. c. 40, § 53, provides a mechanism that would allow any possible claims that the city has abused its discretion to be heard. The legislative delegation in this matter would be well within the permissible bounds authorized by the home rule amendment.

Question 2 also asks whether the delegation is proper under art. 10 of the Massachusetts Declaration of Rights[8] that prohibits the enactment of special legislation that "single[s] out any person for special privileges or advantages at the expense of the rights of another." *Kienzler* v. *Dalkon Shield Claimants Trust*, 426 Mass. 87, 89 (1997), quoting *Sciuto* v. *Lawrence*, 389 Mass. 939, 944 (1983). We find no constitutional impairment in this respect either. A constitutional challenge to a statute must establish "that there are no 'conceivable grounds' which could support its validity. . . . [A] statute which favors one person or group at the expense of another is not necessarily to be condemned as violating art. 10 because much, if not all, legislation has this effect. The critical inquiry is whether the challenged statute can be said to have some legitimate public purpose that predominates over the benefit it otherwise confers on private parties and over any injury to another party." *Kienzler, supra* at 89-91. Here the legitimate public purposes of

---

[8]Article 10 provides in part: "Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing laws." The phrase "standing laws" has been interpreted to mean enacted legislation of general application. *Kienzler* v. *Dalkon Shield Claimants Trust*, 426 Mass. 87, 89 n.1 (1997).

House No. 2194 plainly predominate. First, we discern no manner in which House No. 2194 causes an injury to any individual or group; the Attorney General and all other amici suggest no such injury. The provision of health insurance benefits to a domestic partner of a Boston city employee is no more injurious to anyone else than the provision of benefits under G. L. c. 32B to dependents of employees can be said to injure employees without dependents. Cf. *Opinion of the Justices*, 373 Mass. 883, 884-885 (1977) (bill proposing to restrict activity at public school to females might be invalid under art. 10 because it could violate equal protection rights of similarly situated males). We have observed that the Legislature has endorsed as a public good providing health benefits to individuals and their families, see *supra* at 1217, and the city, like other municipalities that have enacted similar provisions, has a legitimate purpose in attracting and retaining qualified city employees by providing health insurance coverage to household members of its employees. We see no other basis on which to conclude that House No. 2194 would violate this constitutional provision.

*Conclusion.* For all the foregoing reasons, the undersigned Justices respectfully decline to answer Question 1, and answer Question 2, "No."

The foregoing answer and opinion are submitted by the Chief Justice and the Associate Justices subscribing hereto on the 15th day of June, 1998.

HERBERT P. WILKINS

RUTH I. ABRAMS

JOHN M. GREANEY

CHARLES FRIED

MARGARET H. MARSHALL

RODERICK L. IRELAND

I cannot join in this response of the majority because, in answering Question 2 in the negative, the majority opine that "[t]he terms 'domestic partners' and 'dependents' have meanings evident from the words themselves, and thus impose constraints on the city's authority to extend benefits." *Ante* at 1217. I respectfully disagree with this statement, insofar as it pertains to the term "domestic partners."

"Domestic partners" is not a term whose meaning is so plain that the proposed act, without defining the term, "provide[s] adequate direction for implementation." *Chelmsford Trailer Park, Inc.* v. *Chelmsford*, 393 Mass. 186, 190 (1984). The term gives rise to inherent ambiguities with respect to what types of relationships are intended to be included within its reach. Does the term encompass an unmarried couple, heterosexual or otherwise, who have shared both a residence and a monogamous sexual relationship for ten years? For five years? For one year? Is there a sufficient degree of permanence to the relationship involved so that to be included within the act's ambit the couple must do more than declare themselves to be what the law requires? And what of two persons who, despite not engaging in sexual relations, continuously reside together and enjoy a long-standing intimate relationship? Are two people living together who also happen to be blood relatives, like siblings or cousins, "domestic partners?"

The answers to these questions are not suggested by the term itself. The detailed definitions of the term in the Boston ordinance and the varying definitions of the term in other jurisdictions that have similar ordinances demonstrate that the term standing alone lacks a specific meaning.[1] Neither can we find the adequate direction from the ordinance which the bill purports to authorize. Doing so would stand the requirement of legislative direction on its head. To be sure, if the bill itself contained the definitional provisions of the ordinance, we would be presented with a different question. The proposed act's reliance on the undefined term "domestic partners," therefore, constitutes a failure to "provide adequate direction for implementation," as required under art. 10 of the Massachusetts Declaration of Rights for any proper delegation of legislative

---

[1]An ordinance adopted by the city of Atlanta, for example, "defines 'domestic partners' as 'two people of the opposite or same gender who live together in the mutual interdependence of a single home and have signed a Declaration of Domestic Partnership.' The declaration is a city form in which the partners 'agree to be jointly responsible and obligated for the necessities of life for each other.' " *Atlanta* v. *McKinney*, 265 Ga. 161, 162 (1995), quoting City of Atlanta Ordinance 93-0-0776. A Minneapolis ordinance imposes the additional requirements that domestic partners "[a]re not related by blood closer than permitted under marriage laws of the state," and "[h]ave no other domestic partner with whom the household is shared, or with whom the adult person has another domestic partner." *Lilly* v. *Minneapolis*, 527 N.W.2d 107, 109 (Minn. Ct. App. 1995).

authority. *Chelmsford Trailer Park, Inc.* v. *Chelmsford, supra.* Accordingly, I would answer Question 2, "Yes."

NEIL L. LYNCH