CELIA M. SNIFFIN & others[1] vs. THE PRUDENTIAL
INSURANCE COMPANY OF AMERICA & others[2]
(and a companion case[3]).

Suffolk.   December 16, 1980. — April 21, 1981.

Present: BROWN, ROSE, & PERRETTA, JJ.

Rent Control.   Boston.   Municipal Corporations, Rent control.   Prac-
tice, Civil, Class action.   Due Process of Law, Rent control.

This court's decision in Niles v. Boston Rent Control Admr., 6 Mass. App.
Ct. 135 (1978), was properly applied to a case which had not reached a
final judgment before the date of the decision even though the petition
for the rent adjustment at issue was filed nearly two years earlier.
[719-721]
A landlord was not denied due process of law by the failure of the Boston
rent control administration to hold a new evidentiary hearing on the
third remand of the case in order to determine the proper rent adjust-
ment based on the board's Regulation 6 in accordance with this court's
decision in Niles v. Boston Rent Control Admr., 6 Mass. App. Ct. 135
(1978), where Regulation 6 had been in existence prior to the petition
for a rent increase and proper notice had been given the landlord as to
the administration's use of the regulation at the start of the first hear-
ing and where the landlord had been given the opportunity to present
evidence at the first two hearings that the regulation caused it a gross
inequity or extreme hardship and failed so to do.   [721-722]
Upon appeal of a decision of the Boston rent control administration to the
Housing Court of the City of Boston, the judge erred in denying a mo-
tion by the tenant plaintiffs to certify the case as a class action on
behalf of all the tenants occupying the seven hundred eighty-one rent
controlled apartment units whose rent was at issue.   [723-725]

[1] Two hundred forty-three tenants who occupy some one hundred
eighty-seven apartment units of the seven hundred eighty-one apartment
units coming under rent control.

[2] Niles Company, Inc., and the Boston rent control administration.
This action is the subject of an appeal brought by the tenants.

[3] In the companion case, the plaintiffs are Niles Company, Inc. and The
Prudential Insurance Company of America and the defendants are the
Boston rent control administration and the tenants referred to in note 1,
supra.

CIVIL ACTIONS commenced in the Housing Court of the City of Boston on November 26, 1976, and November 29, 1976, respectively.

The cases were heard by *Daher*, C.J.

*Mitchel S. Ross* (*David J. Fried* with him) for The Prudential Insurance Company of America & another.

*Timothy J. Dacey, III* (*Emily C. Hewitt* with him) for Celia M. Sniffin & others.

*Russell F. Fanara* for Boston Rent Board.

BROWN, J. These consolidated appeals have arisen as a result of a remand order by the Housing Court of the City of Boston to the Boston rent control administration (board) for reconsideration of a rent adjustment in light of our decision in *Niles* v. *Boston Rent Control Admr.*, 6 Mass. App. Ct. 135 (1978), and because of certain other rulings made by the Housing Court. The Prudential Insurance Company of America (Prudential or landlord) not only challenges the correctness of the remand but also the process employed by the board. In the companion case, the tenants claim error in the Housing Court's failure (1) to certify a class action under Mass.R.Civ.P. 23, 365 Mass. 767 (1974), (2) to order the landlord to make a refund of their rent overpayments, and (3) to award liquidated damages and attorney's fees.

The origin of this case, which has often followed a rather tortuous path, dates back to July 16, 1976, when Prudential filed a petition with the board for a rent increase for some seven hundred eighty-one apartments at its Prudential apartment complex. The board, which had adopted the regulations of its predecessor, the Boston rent control administrator (see St. 1970, c. 842), rendered a decision in this matter on October 26, 1976. In reaching its decision regarding what rents would yield a "fair net operating income" as prescribed by the local rent control ordinance, c. 15 of the Ordinances of the City of Boston (1975), the board used a two-step approach: it applied its own Regulation 6, a "cost pass through" method; and the multiplier technique prescribed by the Housing Court of the City of Boston in M.E. Goldberg Trust *vs.* Boston Rent Control

Admn.[4]  Both the tenants and landlord appealed to the Housing Court.

The Housing Court judge rendered his first decision on May 6, 1977, and remanded the case to the board "for a fuller determination of depreciation, and for a statement of reason as to why depreciation should or should not be considered in the formula in ascertaining value in the context of the facts presented."  The Housing Court judge, apparently lamenting the continued use by the board of the "Goldberg" formula, indicated that he would reject any view that a formula which includes a fair return on market value was constitutionally required.  However, he went on to state that as no appellate court had issued any pronouncement at that time on the matter, he remained satisfied that the "Goldberg" formula provided the applicable standard.

After reconsideration on remand, the board, on June 9, 1977, accepted the recommendations of its hearing officer, which included the following:  (1) according to the return on value formula, the value of the apartment complex was calculated by the original construction cost (less the amount factored out for noncontrolled units); (2) the complex had not depreciated in value or physically deteriorated since original construction; (3) no functional obsolescence had occurred since original construction; (4) a seven and one-half per cent return on value (original construction cost) yielded a fair net operating income and was not confiscatory; and (5) the landlord's requested rent increases for the penthouse apartments should be approved (an issue presently not in contention and not before us).

On review of this initial remand, the Housing Court judge indicated that, although the board's determinations appeared to be supported by substantial evidence, the matter had to be remanded a second time for findings as to the functional obsolescence of the heating and air conditioning system.  The case was remanded to the board on Novem-

[4] Housing Court of the City of Boston, Eq. 00580 (1974).  For a discussion of the "Goldberg" formula and Regulation 6, see *Niles, supra* at 138 & n.5.

ber 15, 1977, and the board on January 26, 1978, recommended no change in its original decision of October 26, 1976.[5]

On March 23, 1978, this court decided *Niles* v. *Boston Rent Control Admr., supra.* The board had rendered a decision on the second remand at this time, but a final judgment had not been entered.

On March 31, 1978, the tenants' motion for preliminary injunction to enjoin the collection of rent in accordance with the board's decision of October 26, 1976, was allowed. This motion pertained only to the named tenants.[6]

On May 9, 1978, in light of this court's decision in *Niles,* the Housing Court ordered the case remanded to the board for a third time and instructed it to determine a rent adjustment based only on Regulation 6. The remand order included the additional proviso that the board's rent decision would become the "immediate effective legal maximum rent." The differential in the levels of rents (as determined with and without the "Goldberg" formula) was conditionally ordered by this court to be paid back to the tenant parties in this matter.

By separate order dated May 9, 1978, the Housing Court judge denied the tenants' motion to increase the number of tenant parties to the case unless they had filed an appearance with the board, and also refused to certify the case as a class action, deeming the class to be not "so numerous that joinder of all members would be impractical."

Following the order of remand, the board decided to readjust the rents of all the tenants in the Prudential apartment complex. The landlord responded by seeking a preliminary injunction against the board to preclude it from

---

[5] The board found that "[f]unctional obsolescence resulting in loss of value . . . was not shown in any testimony [*sic*] or evidence given." That finding is not here relevant.

[6] A single justice of this court vacated that injunction on April 28, 1978, and ordered that the monthly rent increase, determined pursuant to the October 26, 1976, board decision, be placed in an interest-bearing escrow account.

reconsidering its October 26, 1976, decision concerning tenants "not parties to the action." That motion was allowed by the Housing Court judge on June 26, 1978.[7]

On November 21, 1978, the board adopted the hearing officer's finding that there was no need to hold a further hearing concerning the application of the *Niles* decision. The board proceeded to establish maximum rents under Regulation 6 concluding that an "increase of 10% of that requested by the landlord" should be approved.[8] This percentage was to be applied once "vacancy decontrol units were factored out from income and expenses," thereby attributing "92% of the claimed expenses . . . to controlled units."

An undated "Additions and Corrections" to the board's remand record summarized its decision and we note the major points and findings in that summary: (1) there existed sufficient evidence on the record, so that there was no need to conduct any further hearings; (2) the landlord's expenses were corrected and some capital improvements were disallowed; (3) rents allowed for controlled units for December, 1971, yielded a fair net operating income to the landlord; (4) after passing through the increase in expenses and capital improvements between 1971 and 1975, an increase of ten per cent of that requested was proper; (5) the thirty-six per cent net profit before financing yielded a fair net operating income; (6) in reaching the new rent assessments, the "Goldberg" formula was not used; (7) the decision was effective as of October 26, 1976; and (8) there was sufficient evidence in the record to support all of the above findings.

After the landlord and tenants made various requests to correct and add to the remand record, the Housing Court judge filed his "Finding and Order" on April 17, 1979. The

---

[7] Although this aspect of the case is somewhat unclear, we think that this is a fair characterization of the judge's action. The docket reflects that the judge ordered the board on remand "to limit itself to the [t]enants who were included in the [c]ivil [c]omplaint."

[8] The allowable increase in gross yearly income actually amounts to $89,501.

judge affirmed the decision of the board, concluding that, when the record is considered as a whole, there was substantial evidence to support its decision of November 21, 1978. In rejecting the contention of the landlord that it had been denied the right to due process, the judge pointed out that the board had conducted two previous evidentiary hearings, which included thousands of pages of testimony plus exhibits during the thirty-three months of litigation, that Regulation 6 had been in existence since 1974, and that the landlord had failed to bring forward evidence indicating that the 1971 rent levels denied Prudential a fair net operating income or that Regulation 6 caused Prudential a gross inequity and extreme hardship. Also, the judge enlarged the number of parties who could benefit from the board's rent increase determination by encompassing all tenants who qualified under the standards of Columbia Corp. *vs.* William Edgerton, Admr.[9] These appeals are from the ensuing judgments.[10]

1. *The Niles Decision.*

A. Application by Board.

In *Niles* this court held that the "Goldberg" formula was not required by either the Federal or State Constitutions, and that the "interpretation that [a fair return on fair market value was] a necessary gloss on Regulation 6 [was] incorrect." 6 Mass. App. Ct. at 149. These were the guiding principles applied by the board in its decision on the third remand.

The landlord contends that because it initially sought a rent adjustment in July, 1976, this court's decision in *Niles*, announced on March 23, 1978, should not be retroactively applied, and that the board's initial order of October 26, 1976, should be reinstated. We reject this contention for

---

[9] Housing Court of the City of Boston, C.A. 02780 (1974). This would include the tenants who sought relief from the board but had not pressed their claims before the Housing Court.

[10] After judgment the tenants filed motions to require the landlord to repay overcharges and to grant prospective relief to all tenants. These motions were denied on June 29, 1979.

the reasons stated below. In so doing, we are mindful that "[c]ourts should not be concerned with balancing competing interests and determining what is the 'best' rate level. Rather, their sole task is to determine the lowest constitutionally permissible rate," *Zussman* v. *Rent Control Bd. of Brookline*, 371 Mass. 632, 637-638 (1976), while assessing a fair net operating income or reasonable return on investment. *Niles, supra* at 143.

B. Retroactivity.

This court's decision in *Niles*, issued after the second remand of the present case to the board but while the case was still pending in the Housing Court, precipitated the third remand to the board so that the rent adjustment would be determined solely on the basis of Regulation 6.

We conclude that the *Niles* decision was properly applied by the board pursuant to the Housing Court order. See *Huard* v. *Forest St. Housing, Inc.*, 366 Mass. 203, 211 (1974) ("Even if the [board's] determinations were invalid ab initio, it would seem that landlords who had obtained increases pursuant to improper criteria would have been entitled to redeterminations pursuant to proper standards"). However, we limit its application to those cases which had not reached a final judgment either because they were pending before an administrative body or court or because appellate review had not been exhausted. See *Linkletter* v. *Walker*, 381 U.S. 618, 626-627 (1965).[11] See also *McIntyre* v. *Associates Fin. Serv. Co. of Mass., Inc.*, 367 Mass. 708, 712-713 (1975).

We think that if we did not order the establishment of the rent levels calculated initially by the board on October 26,

---

[11] In *Linkletter* v. *Walker, supra*, the Court made specific reference to and incorporated the opinion of Chief Justice Marshall in *United States* v. *Schooner Peggy*, 5 U.S. (1 Cranch) 103 (1801), where he said: "It is in the general true that the province of an appellate court is only to enquire whether a judgment when rendered was erroneous or not. But if, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied." *Id.* at 110.

1976, pursuant to Regulation 6, the result would be unfair and unjust to the tenants.

In any event, as far as the named plaintiffs are concerned, it is settled that they are entitled to have readjustments of their rents retroactive to the date of the board's original decision (*World Wide Realty* v. *Boston Rent Control Admr.*, 7 Mass. App. Ct. 327, 332 [1979], and cases cited; see *Niles, supra* at 151-152), as they made a direct challenge to the use of the return-on-value formula derived from the Goldberg case (*supra,* note 3). That was the specific relief they sought before the board, and any other result would make the entire administrative and judicial review scheme meaningless and would unjustly enrich either the tenants or, as in this instance, the landlord.

C. Denial of Due Process.

After the Housing Court remanded this matter for a third time in 1978 for reconsideration in light of our *Niles* decision, the board determined that another evidentiary hearing was not necessary. The landlord claims that it was denied due process of law by the board's failure to hold a new evidentiary hearing on the third remand.

Regulation 6, which formed the sole basis of the board's decision on November 21, 1978, had been in existence since 1974, and at the start of the board's initial hearing in 1976, proper notice had been given to the landlord as to the board's utilization of this regulation in assessing the applicable rent. Therefore, its use could not have constituted surprise to the landlord.[12] Opportunity existed on two separate occasions before the board for the landlord to present evidence to rebut the presumption that the 1971 rents yielded a fair net operating income, or to support its contention that Regulation 6 caused it a gross inequity and extreme hardship. See Regulation 6, § 5(b). However, no such evidence was presented.

---

[12] It is not without significance that there is an identity of interest in one of the plaintiffs in the *Niles* case and one of the parties here (see notes 2 & 3, *supra*).

The landlord cites numerous and sundry Federal cases and refers us to G. L. c. 30A, § 11(1), in support of the contention that its due process rights had been violated. It cites *Cella* v. *United States*, 208 F.2d 783 (7th Cir. 1953), cert. denied, 347 U.S. 1016 (1954), in support of this claim. That reliance is badly misplaced in this instance, as "no failure of due process" was found to exist in that case. *Id*. at 789. On the contrary, *Cella* stands for the proposition that "[i]n an administrative proceeding it is only necessary that the one proceeded against be reasonably apprised of the issues in controversy, and any such notice is adequate in the absence of a showing that a party was misled." *Ibid*. In *Cella*, as here, "the order of inquiry informed the [landlord] of the matters which were to be in issue." *Ibid*. See *Market St. Ry*. v. *Railroad Commn. of Cal.*, 324 U.S. 548, 560 (1945) (no due process violation), and *Sun Oil Co*. v. *FPC*, 256 F.2d 233, 240 (5th Cir.), cert. denied, 358 U.S. 872 (1958) (no due process violation as a result of an absence of notice).

General Laws c. 30A, § 11(1), inserted by St. 1954, c. 681, § 1, provides for the parties to have "sufficient notice of the issues involved to afford them reasonable opportunity to prepare and present evidence and argument."[13] We are of the opinion that the statutory standard was satisfied by the board. The two board hearings accorded the landlord its right to due process. It was informed of the applicability of Regulation 6 to the rent assessment determination and was given over fifteen months from the time of the first board hearing until the second hearing to present evidence to the board in fulfilment of its requirements.

---

[13] "Although a rent control board is not an 'agency' for purposes of the State Administrative Procedure Act [citations omitted], the board in a rent adjustment proceeding is required by St. 1970, c. 842, § 8(*d*), to follow the procedures of § 11(1)-(6) of c. 30A." *Palmer* v. *Rent Control Bd. of Brookline*, 7 Mass. App. Ct. 110, 115 n.7 (1979).

D. Conclusion.

Section 7 of St. 1970, c. 842, endows a rent board with substantial discretion in deciding what rent adjustments are to be allowed. *Sherman* v. *Rent Control Bd. of Brookline,* 367 Mass. 1, 8 (1975). We are also reminded that in reviewing rent adjustment determinations[14] "the proper role of the court 'is not to take evidence afresh and decide for itself what rent is to be fixed, but is rather to decide whether the [administrator's] decision was supported by the facts before [him] and was legally justified' [citation omitted]. '[J]udicial review of facts in rent [adjustment] cases does not extend to the taking of evidence de novo' [citation omitted]." *Niles, supra* at 140. We hold that the Housing Court's decision of April 17, 1979, is amply supported by the record, a record composed of numerous volumes of testimony and exhibits from two hearings, and was legally justified in accordance with the *Niles* decision.

*2. Parties Entitled to a Rent Readjustment.*

On April 27, 1978, the tenants moved in the Housing Court to amend their complaint to seek relief on behalf of all persons living in controlled units. See Mass.R.Civ.P. 23, 365 Mass. 767 (1974). The motion was denied on the day the case was remanded to the board for a third time. We think that in the circumstances presented here the judge should have allowed the motion. Cf. *Gay* v. *Waiters' & Dairy Lunchmen's Union,* 549 F.2d 1330, 1332-1334 (9th Cir. 1977).

We recognize, of course, that a judge is vested with "broad discretion under rule 23 in determining whether an action may be maintained as a class action." *Brophy* v. *School Comm. of Worcester,* 6 Mass App. Ct. 731, 735 (1978). That discretion, however, is not without limits; it must be exercised in accord with the purposes sought to be achieved by class actions. See *Spear* v. *H.V. Greene Co.,*

---

[14] For the standard of review in eviction cases under St. 1970, c. 842, see, e.g., *Gentile* v. *Rent Control Bd. of Somerville,* 365 Mass. 343, 349 & n.6 (1974).

·246 Mass. 259, 266-267 (1923). Thus, in order to determine whether an action may be maintained as a class action, the court must carefully apply the criteria set forth in rule 23 for the maintenance of class action to the facts of the case. 3B Moore's Federal Practice par. 23-50, at 23-436 (2d ed. 1980). That appears not to have been done in this instance. Here, the questions of law and fact are not only common to the members of the class and predominate over questions affecting individual members, see Mass.R.Civ.P. 23(b), but also are so tightly interwoven in the dispute that they directly affect its resolution. The board had proceeded on a building-wide basis, and its mistaken reliance on the "Goldberg" formula clearly predominated over any questions affecting only individual tenants. The judge seemingly focused solely on rule 23(a)(1) in reaching his decision. He concluded that the class was not so numerous that joinder of all members was "impractical." We cannot agree. Not only was the number of potential class members (the so called numerosity factor) "unduly emphasized," (see *Gay, supra* at 1332) but, in this instance, that consideration cuts the other way. We do not examine in detail the other components of "impracticable" (see *Brophy, supra*), as the judge apparently did not consider them. However, nothing appears on the record which would weaken the view we take of the propriety of a class action in these peculiar circumstances. Moreover, considerations of efficient and effective use of judicial resources reinforce our determination that joinder should not be required. See *Califano* v. *Yamasaki*, 442 U.S. 682, 701 (1979). Finally, it makes good sense to conduct this case as a class action. By so proceeding, all controlled units will be treated alike, no tenants will be prejudiced, and all future adjustments will be developed from a uniform base. Any unfairness will thus be tempered and, as mentioned earlier, any other conclusion would result in the landlord's being unjustly enriched. The tenants' motion for certification of all tenants living in controlled units in the Prudential apartment complex should have been allowed. We treat this motion as being timely filed and hold that all

class members are entitled to relief as of the date of the board's first decision.[15] See *Alexander* v. *Aero Lodge No. 735, Intl. Assn. of Machinists,* 565 F.2d 1364, 1371-1372 (6th Cir. 1977), cert. denied, 436 U.S. 946 (1978). Cf. *Rafferty* v. *Sancta Maria Hosp.*, 5 Mass. App. Ct. 624, 626-629 (1977). Accordingly, this case is remanded for certification of the class and for further remand to the board for readjustments of the rents for all the members of the class.

3. *Additional relief.*

The only question remaining for discussion in light of what we have already said is the tenants' contention that they are entitled to some additional relief under c. 15, § 9 (a), of the Ordinances of the City of Boston (1975). Passing the question whether the judge within his discretion could deny the tenants' motion to amend their complaint to include such a prayer for relief, we think that the judge correctly ruled that § 9(a) was inapposite to the circumstances of this case.

4. *Conclusion.*

The judgments of the Housing Court are vacated, and this matter is remanded for the further proceedings required by this opinion. That court, however, may make any and all other orders appropriate in the present circumstances which are not inconsistent with this opinion. Costs of appeal are not to be awarded to any party.

*So ordered.*

---

[15] No question has been raised as to what limitations rule 23 placed on the timing of the tenants' motion for class action treatment. Compare *Castro* v. *Beecher,* 459 F.2d 725, 731 (1st Cir. 1972). Nor have the parties addressed the question when the rights of newly joined class members attach. (The board, however, does suggest that the rights of the tenants other than the named plaintiffs attached on November 21, 1978, the date of its third and last hearing.)