CELIA M. SNIFFIN & others[1] vs. THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA & others.[2]

Suffolk.    April 3, 1985. — July 15, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Rent Control. Practice, Civil,* Class action.

A Housing Court judge did not abuse his discretion in approving a stipulation
of settlement entered into between a landlord and representatives of two
classes of tenants in rent-controlled units in buildings owned by the
landlord, purporting to resolve the tenants' claims alleging payment of
rents in excess of the maximum lawful rents, where the settlement itself
did not perpetuate rents at a level which was clearly illegal and where
the judge was warranted in finding, based on conflicting evidence as to
the possible outcomes of the cases, that the settlement was fair and
reasonable, and in the best interests of the classes as a whole. [422-427]

CIVIL ACTIONS commenced in the Boston Division of the
Housing Court Department on November 29, 1976, and August
3, 1979, respectively.

A stipulation of settlement was approved by *E. George
Daher,* C.J., and judgments were ordered by him.

---

[1] Walter H. Mayo, III, and Robert T. Harrington, Jr. The named plaintiffs
represented tenants of the defendant The Prudential Insurance Company of
America. The tenants were certified as classes in two separate class actions.
Sniffin has since resigned as class representative, and is the only one of
the three original class representatives who is appealing to this court. Mayo
and Harrington have continued to act as class representatives, and are
proponents of the settlement.

[2] Niles Company, Inc., and the Executive Director and members of the
Boston rent control administration (rent board). The Prudential Insurance
Company of America instituted a third suit in December, 1981, in Federal
court against the rent board and the tenants named as class representatives
in one of the actions in State court. Prudential alleged that the actions of
the board and the tenants deprived Prudential of its property without due
process of law, in violation of 42 U.S.C. § 1983 (1982).

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Philip M. Weinberg* for Celia M. Sniffin & others.

*Timothy J. Dacey (Frances S. Cohen* with him) for Walter H. Mayo, III, & another.

*Kenneth R. Berman (Mitchel S. Ross* with him) for The Prudential Insurance Company of America.

LYNCH, J. Celia M. Sniffin[3] and certain other class members (objectors) appeal from judgments of the Housing Court of the City of Boston approving a settlement of two suits brought on behalf of the tenants (tenants) in rent-controlled units in buildings owned by the defendant, The Prudential Insurance Company of America (landlord). The objectors are class members in both lawsuits who entered objections below to the stipulation of settlement entered into between the class representatives[4] and the landlord. The settlement purports to resolve the tenants' claims alleging payment of rents in excess of the maximum lawful rents. The objectors argue that the settlement unjustly enriches the landlord because it perpetuates rents at levels previously determined to be illegal. See *Niles* v. *Boston Rent Control Adm'r,* 6 Mass. App. Ct. 135 (1978). The objectors also contend that the proponents of the settlement misrepresented to the court and class members the amount of recovery to which class members may be entitled. We conclude that the objectors have failed to show that the judge abused his discretion in approving the settlement, and therefore affirm the judgment of the Housing Court.

---

[3] Sniffin filed her notice of appeal on behalf of herself individually, "all individual plaintiffs and class members who have previously filed written objections to the [settlement], and on behalf of all individual plaintiffs and class members who desire to appeal the final judgment described herein." Sniffin contends that 187 present and former tenants object to the settlement.

[4] Sniffin alleges that Mayo and Harrington made the offer of settlement on behalf of the class members without her knowledge or approval. Mayo and Harrington have joined with the landlord in arguing that the Housing Court's judgment be affirmed on appeal.

We summarize the lengthy sequence of events leading to the Housing Court's approval of the stipulation of settlement. On July 16, 1976, the landlord filed a petition with the rent board for a rent increase for some 781 apartments at its Prudential apartment complex. In its October 26, 1976, decision, the rent board applied a two-step procedure to determine what level of rents would yield a "fair net operating income." See c. 15 of the Ordinances of Boston (1975). The rent board applied its own Regulation 6, a "cost pass through" method, and also the *Goldberg* formula, a multiplier technique prescribed by the Housing Court in M. E. Goldberg Trust *vs.* Boston Rent Control Admin., Housing Court of the City of Boston, Suffolk County, Eq. 00580 (1974). The tenants[5] sought judicial review of the rent board's decision in the Housing Court. See *Sniffin* v. *Prudential Ins. Co.*, 11 Mass. App. Ct. 714, 715-719 (1981) (discussing proceedings following landlord's 1976 petition for a rent increase). Before a final judgment had been entered on the 1976 petition, the Appeals Court decided *Niles* v. *Boston Rent Control Adm'r, supra*, in which it concluded that the *Goldberg* formula is invalid as a basis for calculating rents.

On March 31, 1978, a judge of the Housing Court allowed the tenants' motion for a preliminary injunction to enjoin the collection of rent in accordance with the rent board's October 26, 1976, decision.[6] In light of the *Niles* decision, a Housing Court judge on May 9, 1978, ordered the case be remanded to the rent board for a determination of the rent adjustment based only on Regulation 6. By a separate order dated May 9,

---

[5] Only certain tenants then living in the apartments affected by the rent increase sought judicial review of the board's decision. These tenants brought suit in Sniffin *vs.* Prudential Ins. Co., Civil Action No. 05584 (1976 *Sniffin* case). This group of tenants is called the "1976 plaintiffs." In 1976, the tenants also appointed a legal committee which has since managed the various lawsuits on their behalf.

[6] A single justice of the Appeals Court vacated that injunction on April 28, 1978, and ordered that the monthly rent increase determined pursuant to the October 26, 1976, rent board decision be placed in an interest-bearing escrow account. The tenants' motion pertained only to the named tenants.

1978, a Housing Court judge denied the tenants' motion to increase the number of tenants who would be parties to the case. The court also refused to certify the case as a class action. On November 21, 1978, the rent board issued its findings establishing maximum rents under Regulation 6. The Housing Court judge issued his "Finding and Order" on April 17, 1979, affirming the decision of the rent board. In his findings, the judge enlarged the number of tenants who could benefit from the rent board's determination.[7]

The landlord and the tenants appealed to the Appeals Court. In the 1976 *Sniffin* case, *supra,* the Appeals Court vacated certain judgments of the Housing Court and remanded for further proceedings. 11 Mass. App. Ct. at 725. The court concluded that the rent board properly applied the *Niles* decision and did not err in rejecting the *Goldberg* formula and in calculating rents according to Regulation 6. *Id.* at 719-723. The court held that the Housing Court's April 17, 1979, decision affirming the board's findings was amply supported by the record. *Id.* at 723. The Appeals Court also concluded, however, that the Housing Court erred in refusing to certify a class of all tenants living in controlled units in the Prudential apartment complex. *Id.* at 723-725. The court remanded for certification of the class and for readjustment of the rents for all the members of the class. *Id.* at 725. The rent board has decided that the 1976 plaintiffs and *Columbia* tenants are entitled to refunds totalling $342,894.50, but has not decided what relief, if any, should be granted to members of the 1976 class who were not among the original named plaintiffs.

Since 1976, the parties have commenced additional actions to determine their respective rights concerning the rents charged at the Prudential apartment complex. On March 23, 1979, the landlord filed with the rent board a new petition for adjustment of the maximum rents at the Prudential apartments. The board

---

[7] The Housing Court judge concluded that, in addition to the original group of tenants (the 1976 plaintiffs), the tenants affected would include all tenants who qualified under the standards of Columbia Corp. *vs.* William Edgerton, Adm'r, Housing Court of the City of Boston, Suffolk County, Civil Action No. 02780 (1974) (the *Columbia* plaintiffs).

issued its decision concerning the petition on July 31, 1979. In August, 1979, tenants in the rent-controlled apartments brought suit in the Housing Court seeking judicial review of the board's July 31 order and also seeking relief under G. L. c. 186, § 18, for alleged discrimination and retaliation by the landlord. See Sniffin *vs.* Prudential Ins. Co., Civil Action No. 09126 (1979 *Sniffin* case). On March 13, 1980, a judge of the Housing Court entered an order certifying a class of all tenants who had either obtained rent reductions pursuant to proceedings in the 1976 *Sniffin* case, or had filed rent reduction petitions in that earlier action. The Housing Court judge remanded the 1979 *Sniffin* case to the rent board for further proceedings to determine whether the landlord's 1979 petition was discriminatory and what relief, if any, should be granted to the 1979 class. The rent board did not hold hearings on these issues prior to the Housing Court's judgment approving the stipulation of settlement.

The landlord brought suit in December, 1981, in the United States District Court for the District of Massachusetts against the rent board and the named class representatives in the 1976 *Sniffin* case. The landlord alleged in Prudential Ins. Co. *vs.* Boston Rent Control Bd., Civil Action No. 81-3292-T, that the actions of the board and the tenants deprived the landlord of its property without due process of law, in violation of 42 U.S.C. § 1983. On August 3, 1982, the Federal District Court entered a preliminary injunction prohibiting the distribution of any rent refunds, and directed that further hearings be held before the rent board. The rent board has held hearings, but had not issued its opinion prior to the Housing Court's judgment approving the stipulation of settlement.

The settlement purports to resolve the issues raised by and claims arising from the landlord's 1976 and 1979 petitions for adjustment of the maximum rents at the Prudential apartment complex. Under the settlement agreement, the landlord is required to pay $800,000 in full settlement of all pending claims against it. In exchange, the landlord is to receive all funds held in escrow, together with all interest accrued or paid thereon. The settlement also provides for dismissal with prej-

udice of the landlord's 1976 and 1979 Housing Court actions[8] and its 1981 Federal action. The settlement also includes an agreement on the maximum lawful rents for units at the Prudential apartment complex during a certain period beginning October 26, 1976.[9]

The stipulation of settlement was filed in the Housing Court, and notice of its terms was sent in July, 1983, to all tenants entitled to relief. At Sniffin's request, the Housing Court postponed the hearing on the settlement to permit additional time for the filing of written objections to the proposed settlement. The objectors retained independent counsel who filed a request to reject or stay adoption of the proposed settlement on the ground that it provided inadequate compensation to the tenants and perpetuated the illegal *Goldberg* rents. On October 25, 1983, the Housing Court judge held a hearing, at which counsel for the proponents, objectors, and the rent board were present. The Housing Court entered its order adopting the settlement as proposed on November 4, 1983, and then entered final judgment on November 28, 1983. The objectors appealed from that judgment to the Appeals Court,[10] and we transferred the case here on our own motion.

1. *Standards governing approval of class action settlements.* Massachusetts R. Civ. P. 23 (c), 365 Mass. 767 (1974), provides, in part: "A class action shall not be dismissed or compromised without the approval of the court." In this case, the Housing Court reviewed the stipulation of settlement and, "deem[ing] the agreement fair and reasonable," gave its approval. The standard applied by the Housing Court in its order is similar to that adopted by the Federal courts when reviewing

---

[8] Niles Co. *vs.* Boston Rent Control Bd., Boston Housing Court, Civil Action No. 05590. Niles Co. *vs.* Boston Rent Control Bd., Boston Housing Court, Civil Action No. 09216.

[9] See note 11, *infra*.

[10] The objectors filed notice of appeal on January 25, 1984, more than "thirty days of the date of the entry of the judgment," the time period during which notice of appeal must be filed. See Mass. R. A. P. 4 (a), as appearing in 378 Mass. 924 (1979). Since none of the parties has raised the issue of the timeliness of appeal, we decline to dismiss the appeal on this basis.

proposed settlements of class actions under Fed. R. Civ. P. 23(e), the Federal provision analogous to Mass. R. Civ. P. 23 (c). "The courts of appeals have required that district court approval of a settlement pursuant to Rule 23(e) be given only where the district court finds the settlement fair, reasonable and adequate." *Armstrong* v. *School Directors of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980). See *Grunin* v. *International House of Pancakes*, 513 F.2d 114, 123 (8th Cir.), cert. denied, 423 U.S. 864 (1975); *West Virginia* v. *Charles Pfizer & Co.*, 440 F.2d 1079, 1085 (2d Cir.), cert. denied sub nom. *Cotler Drugs, Inc.* v. *Chas. Pfizer Co.*, 404 U.S. 871 (1971). "It appears to be well settled that in reviewing the appropriateness of the settlement approval, the appellate court should only intervene upon a clear showing that the trial court was guilty of an abuse of discretion." *West Virginia* v. *Charles Pfizer & Co., supra*. See *Greenspun* v. *Bogan*, 492 F.2d 375, 379 (1st Cir. 1974). "Courts of appeals view the facts in the light most favorable to the settlement. . . . In addition, they do not focus on individual components of settlements, but rather view them in their entirety in evaluating their fairness. . . . Such deference is due the judgment of the district judge because of his familiarity with the litigants, the history of the litigation and the merits of the substantive claims asserted. . . . [T]he essence of a settlement is compromise . . . Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." (Citations omitted.) *Armstrong* v. *School Directors of Milwaukee, supra* at 315.

In determining whether the settlement is fair, reasonable, and adequate, a trial judge should consider various factors. "The most important factor is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *West Virginia* v. *Charles Pfizer & Co., supra*. See generally 3B Moore's Federal Practice par. 23.80 [4], at

520-521 (2d ed. 1985). A settlement should not be approved if it "authorizes the continuation of clearly illegal conduct." *Robertson* v. *National Basketball Ass'n*, 556 F.2d 682, 686 (2d Cir. 1977). The courts have been reluctant, however, to disapprove a settlement unless the alleged illegality is a "legal certainty." See *id.*; *Grunin* v. *International House of Pancakes, supra* at 124.

2. *Legality of rents perpetuated by settlement.* The objectors contend that the Housing Court judge abused his discretion in approving the settlement because it perpetuates rents at a level already held to be illegal in *Niles* v. *Boston Rent Control Adm'r*, 6 Mass. App. Ct. 135 (1978). There can be no abuse of discretion on this basis, however, unless we conclude that the settlement authorizes conduct that is "clearly illegal." See *Robertson* v. *National Basketball Ass'n, supra.* Based on our review of the terms of the settlement in light of the *Niles* decision, we conclude that it does not perpetuate rents at a level which is clearly illegal.

The settlement provides that $800,000 is to be divided among three groups of tenants: (1) $342,894.50 for the 1976 plaintiffs and *Columbia* tenants; (2) $374,306.50 for members of the 1976 class who do not fall into the first group; and (3) $82,800 for the 1979 class. Paragraph six stipulates the level of maximum lawful rents for controlled units during a certain period beginning October 26, 1976.[11] The objectors focus on

---

[11] Paragraph 6 provides that the maximum lawful rents "during the period from October 26, 1976 to the present, or for such shorter period as the said units were subject to the Boston Rent Control Ordinance, shall be as follows: (a) For the [1976] Plaintiffs and Columbia Tenants, the rents set by the Rent Board's [November 21, 1978, order] and by the [July 31, 1979, order], as modified by the general adjustment which took effect on March 1, 1981 . . . ; (b) For members of the 1976 Class who are neither Plaintiffs nor Columbia tenants, and who did not bring rent reduction petitions in reliance on [the Housing] Court's decision in [the 1976 *Sniffin* case], the rents set by the [October 26, 1976, rent board order, as modified by the general adjustments which took effect on January 1, 1977, and March 1, 1981] . . . ; (c) For those members of the 1976 Class who were not Plaintiffs or Columbia Tenants, but who brought rent reduction petitions in reliance on [the Housing] Court's decision in [the 1976 *Sniffin* case], the rents set by the Board's [October 26, 1976, order], as modified by the general adjustment which

sections (b) and (c) of paragraph six as perpetuating rents determined to be illegal in *Niles* v. *Boston Rent Control Adm'r*, 6 Mass. App. Ct. 135 (1978).[12]

Sections (b) and (c) of paragraph six provide that the rent levels for certain members of the 1976 class are those established by the rent board in its October 26, 1976, decision, modified upward by intervening general adjustments and landlord petitions for increases. In that decision, the rent board calculated the rent level by employing both the Regulation 6 standards and the *Goldberg* "return on value" formula. The *Goldberg* formula has since been held invalid in *Niles* v. *Boston Rent Control Adm'r, supra*. In *Sniffin* v. *Prudential Ins. Co.*, 11 Mass. App. Ct. 714, 720-721 (1981), the Appeals Court held that *Niles* applies retroactively to the rent board's 1976 decision. As a result, the Appeals Court remanded the case to the board and ordered that it make further findings as to the appropriate level of rents for all 1976 class members at the Prudential apartment complex since 1976. The objectors argue that, as a result of the settlement, the board has never made a uniform readjustment of rents, so that for certain tenants the base from which all future adjustments will be made is the inflated level imposed by the board in 1976 when it improperly applied the *Goldberg* formula. The objectors contend that this preservation of the *Goldberg* rents creates an unnecessary rent disparity among the tenants, and also unjustly enriches the landlord.

We conclude that, although the rent board has not readjusted the rents of the 1976 class members in conformity with the decisions of the Appeals Court in *Niles* and *Sniffin*, it is not clear that, as a result of the settlement, they are set at an illegally high level. At the time of the settlement, neither the rent board nor the Housing Court had reached a final determi-

took effect on January 1, 1977, and the rents set by the Board's [July 31, 1979, decision], as modified by the general adjustment which took effect on March 1, 1981 . . ."

[12] The objectors apparently do not challenge the legality of rent levels set by paragraph six (a), which governs the rents for the 1976 plaintiffs and *Columbia* tenants. Under the terms of the settlement, this group of tenants receives the full amount to which the rent board has decided they are entitled.

nation as to what level of rents is appropriate for the 1976 class members. The landlord contends that it could justify further rent increases under the Regulation 6 method of calculating rents, so that further adjustment proceedings would not necessarily result in a rent level lower than that set by the board in its October 26, 1976, decision. The board's July 31, 1979, decision suggests, moreover, that it might uphold a rent level similar to that set by its October 26, 1976, decision.[13] The repudiation of the *Goldberg* formula does not automatically indicate that the board's 1976 rent findings would be dramatically altered. Throughout this prolonged course of litigation, the parties have been unable to reach agreement as to the extent, if any, of the landlord's liability. Since the purported illegality of the rent structure is far from a legal certainty, we do not reverse the Housing Court's judgment on this basis. Cf. *Grunin* v. *International House of Pancakes, supra* at 124. The settlement reflects a compromise reached by members of the 1976 and 1979 classes, and the landlord. The rent levels established by paragraph six are not clearly in conflict with the *Niles* decision invalidating the *Goldberg* formula for calculating rents.

3. *Misrepresentation.* The settlement agreement reached by the class representatives and the landlord in this case attempts to resolve seven years of litigation and several lawsuits pending in State and Federal courts. It provides that the tenants suing in the 1976 and 1979 *Sniffin* cases receive a total of $800,000 and, as a result, avoid the risks and expenses associated with further litigation. The settlement ensures to the landlord that its current rent structure remains intact and that it is free from the burdens associated with further litigation arising from its 1976 and 1979 petitions for rent increases.

The objectors raised various arguments before the Housing Court in support of their opposition to the agreement. In addition to their contention that the settlement perpetuates illegal

---

[13] In its July 31, 1979, decision, the rent board found that the landlord had incurred increased operating costs sufficient to justify, under Regulation 6, rents approximately equal to the rents set in 1976 under the *Goldberg* formula.

rents, the objectors argued that it creates a disparity in the treatment of the 1976 plaintiffs and *Columbia* tenants, on the one hand, and the other members of the 1976 class. The objectors contended that the settlement would perpetuate inequality and propagate division among the tenants. On appeal, the objectors contend that the proponents of the settlement materially undervalued the comparative recovery of the 1976 plaintiffs and the 1976 class.[14]

In approving the settlement, the judge of the Housing Court stated in his opinion that "as the guardian of the interest of absent parties [the court] must make an independent evaluation of the fairness and reasonableness of the settlement." The judge acknowledged that "a settlement agreement is a product of negotiations; one of the parties may well be entitled to more money, but in the interest of avoiding further litigations, agrees to resolve the matter." The judge then went on to consider the various arguments raised by the objectors, including their contention that the class representatives did not fully and adequately protect the interests of the class. The judge deemed the agreement "fair and reasonable," in light of his evaluation of the likelihood that the tenants would receive a greater recovery if the cases were not settled. The judge considered both the likelihood of success on the merits and the costs of further delays, including greater attorneys' fees and continued shrinkage of the class size because of deaths and difficulty in maintaining contact with former tenants. We conclude that the judge did not abuse his discretion in approving the settlement as fair and reasonable.

In reviewing the fairness of the settlement, we will reverse only upon a showing of abuse of discretion by the judge of the Housing Court. See *Greenspun* v. *Bogan*, 492 F.2d 375, 379 (1st Cir. 1974). We examine the reasonableness of the settlement "under the totality of the circumstances." See *Grunin* v. *International House of Pancakes, supra* at 124. Further-

---

[14] Use of the term "1976 class" in this section refers only to those members of the 1976 class who do not qualify for recovery as "1976 plaintiffs" or *Columbia* tenants.

more, although we consider the existence of any objection as a factor in our inquiry, we will not reverse if we conclude that the judge did not abuse his discretion in determining that the settlement is in the best interests of the class as a whole. See *Laskey* v. *International Union*, 638 F.2d 954, 957 (6th Cir. 1981). We are inclined to give deference to the judgment of the Housing Court judge because of his greater familiarity with the parties, issues, and history of the litigation.

The 1976 class members who do not fall into the first group of tenants receive $374,306.50 under the terms of the settlement. The objectors contend that the judge abused his discretion in approving this part of the agreement because the settlement proponents significantly misrepresented the comparative recovery of this group of tenants, as measured against the recovery of the 1976 plaintiffs and *Columbia* tenants. The objectors argue that, while the proponents represented that the 1976 class members would receive a comparative recovery of 88% of that received by the 1976 plaintiffs and *Columbia* tenants, in fact the settlement recovery offered the 1976 class is less than 58% of the comparative refund. The objectors contend that the proponents also misrepresented the time period for which the 1976 class could recover for excess rents. The objectors concluded in their brief that the minimum class overpayment is $796,078, so that the settlement offer is less than half of the projected refund and significantly less than that represented by the proponents.

The objectors' allegations of misrepresentation raise serious questions. We would be reluctant to affirm the judgment of the Housing Court if we were persuaded that the proponents of the settlement had grossly misrepresented the facts to the class members or to the judge below. This would raise doubt as to the fairness of the settlement agreement. We are not, however, persuaded that the proponents of the settlement in this case significantly misrepresented the likely recovery of the 1976 class members who are not 1976 plaintiffs or *Columbia* tenants. The proponents represented that the 1976 class members would be likely to recover $422,000, a figure derived from an exhibit prepared by the landlord and submitted to the

rent board during hearings in 1982. That figure represents the sum of refunds shown as due to the "class group" for 1976, 1977, and 1978. The proponents argue that this figure is more reliable than that propounded by the objectors. The proponents argue, furthermore, that the time period for which the 1976 class members could recover is still very much in dispute. It is not clear at what point the rights of the class members attached, so they may be entitled to refunds for a period even shorter than that selected by the proponents in calculating their likely recovery. The objectors have failed to show that the figures introduced by the proponents at the hearing unfairly represented the possible recovery of the 1976 class members.

At the hearing on the proposed settlement, the judge was confronted with conflicting evidence as to the possible recovery of the 1976 class members. The dispute between the objectors and proponents concerning the likely recovery by the 1976 class members apparently reflected differences in judgment concerning the possible outcome of the State and Federal actions. We are unwilling to conclude that the Housing Court judge abused his discretion in affirming a settlement that clearly reflects a compromise of numerous disputed issues. "The evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 (2d Cir. 1974). In light of the uncertainties attending any future outcome of this prolonged course of litigation, we conclude that the judge did not abuse his discretion in finding that the award of $374,306.50 to the 1976 class members is fair and reasonable. The possibility of a greater recovery if there had been no settlement agreement does not render this award inadequate or unfair.

4. *Conclusion.* In light of our conclusions that the judge properly based his findings on conflicting evidence as to the possible outcomes of the cases, and that the settlement itself does not perpetuate "clearly illegal" conduct, there was no abuse of discretion in the judgments approving the stipulation of settlement.

*Judgments affirmed.*