NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13777

MATTHEW ORTINS[1] & another[2]  vs.  LINCOLN PROPERTY COMPANY
& others.[3]


Essex.     December 5, 2025. – April 14, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
Dewar, & Wolohojian, JJ.


Notice.  Practice, Civil, Class action, Standing.  Judgment,
Implementing settlement agreement.


Civil action commenced in the Superior Court Department on
July 14, 2014.

A motion for certification and approval of a class action
settlement was heard by John T. Lu, J., and a motion for an
order approving final distribution of unclaimed settlement funds
was heard by Janice W. Howe, J.

The Supreme Judicial Court granted an application for
direct appellate review.

---

[1] Individually and on behalf of all others similarly
situated.

[2] Olivia Savarino, individually and on behalf of all others
similarly situated.

[3] Salem Station, LLC; and Lincoln Apartment Management, LP.

Douglas W. Salvesen (Jenna Miara also present) for
Massachusetts IOLTA Committee.
Jeffrey C. Turk for the defendants.
Orestes G. Brown (Bailey Buchanan also present) for the
plaintiffs.
Christopher E. Hart, John Froio, Jacquelynne J. Bowman,
Georgia D. Katsoulomitis, Richard Vitali, Elizabeth A. Soule,
Jayne Tyrrell, Shennan Kavanagh, & Anita P. Sharma, for Boston
Bar Association & others, amici curiae, submitted a brief.

GEORGES, J.  This appeal presents a narrow but important question concerning the operation of Mass. R. Civ. P. 23 (e), as amended, 471 Mass. 1491 (2015) (rule 23 [e]):  whether the failure to provide the Massachusetts IOLTA Committee (committee or IOLTA committee)[4] with notice and an opportunity to be heard before approval of a class action settlement, assuming the committee was entitled to notice, requires that the settlement approval and resulting judgment be set aside.  The committee, which was not a party to the underlying litigation, received notice of the class action settlement in this matter for the first time more than two years after the settlement's final approval in the Superior Court.  After receiving notice, the committee opposed the parties' joint motion for an order approving the final distribution of unclaimed settlement funds, arguing that the settlement had been approved without timely notice under rule 23 (e).  The motion judge allowed the parties'

---

[4] "IOLTA" stands for "Interest on Lawyers' Trust Account."
See Matter of Olchowski, 485 Mass. 807, 808 (2020).

joint motion and entered a final judgment of dismissal in accordance with the settlement.

On appeal, the committee contends that the absence of timely notice compels vacatur of the judgment and order approving the settlement, as well as renewed proceedings concerning disposition of any residual funds. The committee also raises arguments attacking the circumstances and terms of the settlement itself. The parties respond that, among other things, the committee lacks standing to raise these additional arguments challenging the settlement.

We conclude that the committee has standing to appeal from the alleged denial of the procedural entitlement conferred on the committee by rule 23 (e) (3): namely, timely notice and an opportunity to be heard on whether it should receive residual funds.[5] The committee lacks standing, however, to contest the settlement's over-all fairness, reasonableness, or adequacy, or otherwise attack the validity of its terms. Assuming, without deciding, the approval of the settlement violated rule 23 (e) (3), we conclude that the committee suffered no

---

[5] Rule 23 (e) (3) was amended in 2023, after the settlement was finally approved in this matter but before final judgment had entered, to require that the plaintiff notify the committee "no later than [thirty] days prior to the entry of judgment or any hearing approving any compromise that creates residual funds" and submit a certification of compliance. Mass. R. Civ. P. 23 (e) (3), as amended, 492 Mass. 1401 (2023).

prejudice. The committee ultimately received the process that rule 23 (e) (3) guarantees -- an opportunity to be heard as a potential recipient of any residual funds -- and the record provides no basis to conclude that earlier notice would have altered the outcome. The violation therefore does not warrant vacating the judgment or the settlement approval. We affirm.[6]

Background. 1. The underlying class action. The underlying class action litigation arose from claims brought in the Superior Court by two former tenants against the owner and manager of a residential apartment complex. The plaintiffs alleged that the defendants violated the security deposit statute, G. L. c. 186, § 15B, by charging unlawful rental application fees and excessive fees for changing apartment locks, and that these practices constituted unfair or deceptive practices in violation of G. L. c. 93A. The plaintiffs sought relief on behalf of a Statewide class of similarly situated tenants and prospective tenants.

---

[6] We acknowledge the amicus brief in support of the IOLTA committee submitted by the Boston Bar Association, De Novo Center for Justice and Healing, Greater Boston Legal Services, Inc., Massachusetts Law Reform Institute, Massachusetts Legal Assistance Corporation, MetroWest Legal Services, National Association of IOLTA Programs, National Consumer Law Center, National Legal Aid and Defender Association, and Political Asylum/Immigration Representation Project, Inc.

After certification of the class and appointment of the named plaintiffs as class representatives, discovery proceeded contentiously.  As a sanction for discovery violations, the defendants were precluded from contesting certain facts bearing on liability.  The parties thereafter filed cross motions for summary judgment.  The defendants' motion was denied, and the plaintiffs' motion was allowed as to liability under G. L. c. 186, § 15B, but denied as to the G. L. c. 93A claims.

2.  The settlement and judicial supervision.  On the eve of trial, the parties informed the Superior Court that they had reached a proposed settlement.  The proposed settlement called for the creation of a settlement fund to pay for claims submitted by class members.  Although the proposed terms obligated the defendants to pay up to an aggregate maximum of $4.16 million to satisfy class member claims, the defendants were not required to immediately deposit the maximum amount into the fund.  Rather, the defendants were required to deposit $800,000 initially into the fund, with additional contributions only as needed.

Presented with the parties' proposed settlement, a Superior Court judge (settlement judge) expressed concern at two hearings about a provision allowing unclaimed settlement funds to revert to the defendants.  The settlement judge indicated that any settlement permitting more than $700,000 to revert to the

defendants would be unacceptable but that a $500,000 cap would be reasonable. The parties revised the settlement agreement accordingly to cap any reversion at $500,000. After further hearings and revisions, the settlement judge granted preliminary approval, notice was provided to the class, and a fairness hearing was held. See Mass. R. Civ. P. 23 (e) (2), as amended, 471 Mass. 1491 (2015). The settlement was finally approved by the settlement judge in July 2021. Although the settlement judge referenced the committee during the hearings as a potential cy pres recipient of residual funds,[7] and plaintiffs' counsel acknowledged an obligation to notify the committee of the settlement, it is undisputed that the plaintiffs did not provide the committee notice of the settlement before either preliminary or final approval.

---

[7] The term "cy pres" derives from the Norman French phrase meaning "as near as possible." 4 W.B. Rubenstein, Newberg and Rubenstein on Class Actions § 12:32, at 255 (6th ed. 2022). In the class action settlement context, the equitable doctrine of cy pres permits funds unclaimed by class members to be distributed to an entity whose work is as near as possible to the interests of the class, rather than reverting to the defendant. Id. at 255-257.

At the preliminary approval hearing, the parties proposed a veterans' charity as a potential cy pres recipient. The settlement judge expressed reservations and suggested that a housing-related charity or the committee might be more appropriate, while stating that he was not endorsing any particular entity.

As approved, the final settlement created a settlement fund to satisfy class member claims up to $4.16 million.  Like the proposed settlement, the defendants were required to deposit only $800,000 initially, with additional amounts to be deposited as may have been required to satisfy class member claims.[8]  Each class member who submitted a valid claim would receive payment of no less than one hundred percent and up to 200 percent of the rental application fee and lock change fee that he or she paid, as applicable.  Following completion of the claims process, the settlement provided that the first $100,000 of any unclaimed amounts left in the settlement fund would be donated in equal shares to two affordable housing charities named as cy pres recipients.  For the remainder of any unclaimed funds beyond the first $100,000, up to $500,000 would be returned to the defendants, and the rest would be donated to the same two cy pres recipients.

3.  Notice to the committee and final distribution.  In November 2023, the parties jointly moved for approval of a final distribution of the unclaimed settlement funds to the designated cy pres recipients, for reversion of the remaining balance to

[8] Additionally, the settlement provided that plaintiffs' counsel would apply to the court for service awards of $40,000 to each of the two class representatives, paid from the class settlement amount; and $1 million in attorney's fees and costs to plaintiffs' counsel, paid separately from the class settlement amount.

the defendants, and for dismissal of all claims with prejudice and entry of final judgment (joint motion). By that time, approximately 220 class members had submitted claim forms, resulting in payments of approximately $51,000 to the class. Under the proposed final distribution, approximately $500,000 of the initial $800,000 settlement deposit would be returned to the defendants,[9] and approximately $124,500 would be donated to each cy pres recipient.

In connection with the parties' joint motion, the committee received notice of the settlement for the first time in December 2023 -- more than two years after final approval of the settlement, and after the claims process had concluded. The committee objected to the parties' joint motion, arguing that the failure to notify it violated rule 23 (e).[10] At a hearing

_____

[9] Administrative fees were deducted from the $500,000.

[10] The committee additionally argued that the return of unclaimed funds to the defendants violated Mass. R. Civ. P. 23 (e) (2), which provides that residual funds "shall be disbursed to one or more nonprofit organizations or foundations" or to the committee. Under these circumstances, where the committee was never designated in the settlement as a recipient of unclaimed funds, the committee cannot challenge an alleged violation of rule 23 (e) (2). See, e.g., New England Merchants Nat'l Bank of Boston v. First Church in Swampscott (Congregational), 346 Mass. 780, 780-781 (1964), and cases cited (institution hoping to benefit from cy pres has no legally realized interest in fund and no right to appeal). We express no opinion whether the organizations who were actually designated as cy pres recipients in the settlement would have standing to raise such a claim.

before a different Superior Court judge (motion judge) on the parties' joint motion, the committee sought to "correct" the settlement judge's order approving the settlement.[11]

Following the hearing, the motion judge issued a memorandum of decision and order granting the parties' joint motion. Although the motion judge concluded that rule 23 (e) had been violated by the failure to provide timely notice to the committee, she declined to exercise her "discretion" to "unwind" a settlement that, after extensive judicial supervision, had been approved and largely implemented. Final judgment entered, the committee appealed, and we granted its application for direct appellate review.

Discussion. 1. Standing. Standing is a threshold requirement. See Cubberley v. Commerce Ins. Co., 495 Mass. 289, 293 (2025). Generally, only parties to a lawsuit may appeal from an adverse judgment. See Corbett v. Related Cos. N.E., 424 Mass. 714, 718 (1997). Although such exceptions are "rare," id., this is one of the limited circumstances in which a nonparty may appeal.

Rule 23 (e) (3) requires that, "[w]here residual funds may remain, no judgment may enter or compromise be approved unless the plaintiff has given notice to the [committee] for the

---

[11] By the time of this hearing, the settlement judge had retired.

limited purpose of allowing the committee to be heard on whether it ought to be a recipient of any or all residual funds."  Mass. R. Civ. P. 23 (e) (3).  The rule therefore confers on the committee a specific procedural entitlement -- notice and an opportunity to be heard -- sufficient to support standing to challenge the denial of that entitlement.  Cf. Randolph v. Commonwealth, 488 Mass. 1, 6-7 (2021) (where G. L. c. 278A requires notice and opportunity to be heard before third party may be compelled to provide biological material, third party is also entitled to appellate review of order); DiMartino v. Quality Indus. Propane, Inc., 407 Mass. 171, 174 (1990) (where G. L. c. 152, § 15, "expressly grants the workers' compensation insurer . . . an opportunity to be heard concerning approval of a third-party settlement," such insurer "has sufficient interest to be entitled to appellate review of the judge's decision").[12]

The scope of that standing, however, is cabined by the right conferred by the rule.  Rule 23 (e) (3) authorizes the committee to be heard only for the "limited purpose" of whether "it ought to be a recipient of any or all residual funds."

_____

[12] Because the committee's right to notice and an opportunity to be heard is integral to the rule, we also hold that the committee has standing to appeal from a judge's failure to "require notice to the Massachusetts IOLTA Committee for the purpose set forth in [rule 23 (e) (3)]."  Mass. R. Civ. P. 23 (c), as amended, 471 Mass. 1491 (2015).

Mass. R. Civ. P. 23 (e) (3).  It does not transform the committee into a surrogate for absent class members.  Nor does it authorize the committee to challenge, on behalf of those absent class members, the settlement's terms directly or claim that they are unfair, unreasonable, or inadequate.  See Sniffin v. Prudential Ins. Co. of Am., 395 Mass. 415, 420-422 (1985).  Those responsibilities remain with the settlement judge, who retains an independent obligation to scrutinize any proposed compromise affecting absent class members.  See id. at 426 (judge, in his or her discretion, determines whether "the settlement is in the best interests of the class as a whole").  See also 4 W.B. Rubenstein, Newberg and Rubenstein on Class Actions § 13:40, at 485 (6th ed. 2022) (Rubenstein on Class Actions) (during class action settlement process, judge is responsible for "ensur[ing] that the interests of the[] absent class members are safeguarded"); Mass. R. Civ. P. 23 (d), as amended, 471 Mass. 1491 (2015) (court at any stage may "impose such terms as shall fairly and adequately protect the interests of the class").  The committee's function is therefore advisory rather than supervisory:  to present reasons why it should receive residual funds so that the settlement judge may incorporate that perspective into his or her own determination of whether to approve the settlement.

2.  <u>Rule 23 (e) (3):  purpose and application</u>.  Rule 23 (e) addresses the recurring problem of unclaimed settlement funds in class actions and reflects a policy judgment about how such funds should be handled when a claims process has been exhausted.  See Rubenstein on Class Actions § 12:28, at 230 (determination of how unclaimed funds are to be distributed is "a policy decision based on the prevailing equities," where court "consider[s] how the various distribution methods serve the purposes of class action litigation:  compensation, deterrence, and efficiency").  Having weighed these considerations ourselves, this court designed rule 23 (e) to ensure that an institutional actor -- the committee -- has an opportunity to be heard as a potentially appropriate recipient of residual funds, so that, <u>if</u> the funds are awarded to the committee, they may be used "to support activities and programs that promote access to the civil justice system for low income residents of the Commonwealth."  Mass. R. Civ. P. 23 (e) (2).  See Letter from Lisa C. Wood, Chair of the Massachusetts IOLTA Committee, to the Honorable John M. Greaney, Chair of the Supreme Judicial Court Rules Committee (May 7, 2008) (explaining that committee programs are appropriate recipients of residual funds, as programs' underlying missions are consistent with purpose of rule 23).

At the same time, the rule is limited.  It does not require that residual funds be awarded to the committee; rather, by its plain language, the rule only requires that the committee receive timely notice and an opportunity to be heard before a court approves a compromise or enters judgment in a case where residual funds may remain.  See Mass. R. Civ. P. 23 (e) (3).  See also Mass. R. Civ. P. 23 (e) (1), as amended, 471 Mass. 1491 (2015) ("Nothing in this rule is intended to limit the parties to a class action from suggesting, or the trial court from approving, a settlement that does not create residual funds").  Stated differently, rule 23 (e) (3) confers a limited participatory right -- notice and an opportunity to be heard -- rather than a substantive entitlement to receive residual funds or to litigate, for example, settlement adequacy.

Consistent with that design, rule 23 (e) (3) protects the committee's ability to participate in the court's decision-making process.  Although earlier participation may in some cases inform how parties structure a proposed compromise, the rule does not give the committee authority to dictate settlement architecture based on its views as to what may be in the best interest of absent class members.  As noted, the ultimate responsibility for protecting the interests of absent class members rests with the settlement judge.  See Sniffin, 395 Mass.

at 426.  See also Mass. R. Civ. P. 23 (d); Rubenstein on Class Actions § 13:40.

Whether the committee's limited right was implicated here turns in part on whether the settlement's "claims-made" process contemplated residual funds.[13]  Courts and commentators have debated whether rules governing the disposition of residual funds "apply to claims-made settlements."  Rubenstein on Class Actions § 12:35, at 292-293.  See, e.g., Cundiff v. Verizon Cal., Inc., 167 Cal. App. 4th 718, 721-722, 731 (2008) (statute concerning disposition of "unpaid residue" applied to claims-made settlement where checks sent to class members were returned as undeliverable or uncashed).  Whether claims-made settlements trigger rule 23 (e) (3) remains an open question in Massachusetts.  Because resolution of that question is unnecessary to our decision, we assume, without deciding, that the settlement here contemplated residual funds.

That assumption is warranted because, notwithstanding the settlement's claims-made process, the settlement required the defendants to make an advanced deposit into a settlement fund,

---

[13] A "claims-made" settlement is one "that does not have a fixed settlement fund, but rather provides that the defendant will pay claims of class members who file them, usually up to some fixed ceiling."  Rubenstein on Class Actions § 13:7, at 312.  Thus, in a claims-made settlement, "the defendant's liability is never greater than the precise amount the class claims."  Id. at 314.

established procedures for the disposition of amounts not claimed by class members, and expressly contemplated residual cy pres distributions. In these circumstances, the settlement's operation was materially indistinguishable from one producing residual funds. Our assumption that rule 23 (e) (3) applied therefore reflects the practical operation of the settlement rather than its label.

Assuming rule 23 (e) (3) applied, the plaintiffs' failure to notify the committee before final approval constituted a violation of the rule. The committee was not given notice until after the settlement was finally approved, well after the point at which the rule requires notice to be given. Yet the dispositive question is not whether the rule was violated, but what prejudice, if any, follows from that violation. Not every violation of a procedural rule requires vacatur. See Mass. R. Civ. P. 61, 365 Mass. 829 (1974); G. L. c. 231, § 119. Courts will not disturb a judgment unless refusal to do so would be "inconsistent with substantial justice." Mass. R. Civ. P. 61.

In assessing prejudice in this context, the relevant inquiry is whether the delayed notice deprived the committee of a meaningful opportunity to present any arguments the rule authorizes it to make that would have changed the outcome. See Adoption of Sherry, 435 Mass. 331, 336 (2001) (no need to disturb judgment where error did not affect outcome). Cf.

Johnson v. NPAS Solutions, LLC, 975 F.3d 1244, 1254-1255 (11th Cir. 2020), cert. denied sub nom. Johnson v. Dickenson, 143 S. Ct. 1745 (2023) (error in timing of notice to objector in class action was harmless where objector was not deprived of opportunity to present objections that would have affected outcome).  Rule 23 (e) (3) safeguards the committee's participation in the court's approval process; it does not guarantee a particular settlement structure.  We therefore consider whether the rule 23 (e) (3) violation here, if it occurred, resulted in prejudice.

3.  Lack of prejudice.  Although the committee did not receive notice before final approval of the settlement, it ultimately was notified and afforded a full opportunity to be heard on the precise issue rule 23 (e) (3) authorizes it to address:  whether the committee should receive any residual funds.  The committee presented those arguments in a memorandum and at a hearing before judgment entered.

The committee identifies no argument that it was prevented from making because of the timing of the notice, nor does it point to any basis in the record to conclude that earlier notice would have altered the court's approval of the settlement or the ultimate disposition of residual funds.  See Adoption of Sherry, 435 Mass. at 336.  Although earlier participation might have affected the dynamics of settlement negotiations, such

speculation does not establish prejudice to the committee's limited procedural interests.

The record further reflects that, before granting approval, the settlement judge independently examined and required revisions of the very features of the proposed settlement about which the committee now expresses concern -- including the treatment of unclaimed funds and the extent of any reversion to the defendants.  That inquiry -- including the settlement judge's misgivings about whether a proposed cy pres recipient bore a sufficient relationship to the claims at issue[14] -- served the institutional purpose underlying rule 23 (e):  ensuring that the disposition of potential residual funds is considered explicitly and in light of competing equitable interests. Where, as here, the settlement judge engaged in that inquiry, earlier participation by the committee would not have meaningfully altered the informational landscape before the settlement judge.  Accordingly, on this record, the violation did not prejudice the committee's limited procedural interest.[15]

---

[14] See note 7, supra.

[15] Cf. Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey Partnership, S.E., 615 F.3d 45, 52 (1st Cir. 2010) (error of sua sponte summary judgment entering without appropriate notice would be harmless if appellant was not deprived of opportunity to present evidence resulting from unfair surprise).

Conclusion.  The IOLTA Committee has standing to appeal from the failure to provide notice required by Mass. R. Civ. P. 23 (e) (3), but it lacks standing to challenge the settlement's over-all fairness or structure.  Assuming the rule was violated, there was no prejudice on this record.  That conclusion reflects the procedural posture:  the committee ultimately received a full opportunity to be heard on whether it ought to be a recipient of any or all residual funds.

Our decision should not be read to suggest that delayed notice to the committee is never prejudicial, particularly where the absence of timely participation prevents the court from addressing the treatment of potential residual funds at the settlement-approval stage.  Nor does our conclusion that no prejudice occurred here dilute the rule's requirements or permit disregard of its notice provisions.  Compliance with rule 23 (e) (3) is mandatory.  See USTrust Co. v. Kennedy, 17 Mass. App. Ct. 131, 135 (1983) ("Rules of procedure are not just guidelines.  Their purpose is to provide an orderly, predictable process by which parties to a law suit conduct their business").  Trial courts must ensure that the committee receives timely notice whenever residual funds may remain.  See Mass. R. Civ. P. 23 (c), as amended, 471 Mass. 1491 (2015) (court "shall" require notice to committee for rule 23 [e] [3] purposes).  In furtherance of this requirement, trial courts should address

rule 23 (e) (3) expressly at the settlement-approval stage, confirming compliance with that rule before approving a settlement or entering judgment.

<u>Judgment affirmed</u>.